UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

WILLIAM PENN REAVIS, SR.,

Petitioner,

v.  Criminal Action No. 4:07cr75
Civil Action No. 4:09cv157

UNITED STATES OF AMERICA,

Respondent.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure, as well as Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia, by order filed November 3, 2010. (ECF No. 83).[1]

On December 14, 2009, William Penn Reavis, Sr. ("Reavis" or "petitioner"), a federal prisoner proceeding pro se, filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. 2255. (ECF No. 70). Reavis simultaneously filed a memorandum in support of his motion. (ECF No. 71). The United States responded on March 12, 2010. (ECF No. 75).

In his motion and supporting memorandum, Reavis asserts seven grounds for relief, all of which involve allegations that his counsel was ineffective. Specifically, he claims that counsel: (1) failed to raise a defense; (2) coerced him into entering a plea of guilty by promising that he would be sentenced to no more than three years imprisonment; (3) failed to inform Reavis that the Presentence Investigation Report ("PSR") would affect his sentence; (4) misrepresented that

---

[1] Docket entries are to the criminal action.

1

the United States would not challenge his objections to the PSR and would request a downward departure; (5) failed to note an exception to the District Court's ruling regarding Reavis' objections to the PSR; (6) failed to raise the issue of jurisdiction; and (7) failed to file a direct appeal. In an Opinion and Order filed November 1, 2010, the District Court denied petitioner's motion with respect to grounds one through six. With respect to ground seven, the District Court directed that an evidentiary hearing be conducted. The matter was referred to the undersigned Magistrate Judge to conduct the hearing and prepare a Report and Recommendation recommending disposition of ground seven. (ECF No. 83).

On January 20, 2011, Robert B. Jones was appointed to represent Reavis for the purpose of the evidentiary hearing. (ECF No. 87). The undersigned conducted an evidentiary hearing on February 14, 2011. After reviewing the sworn testimony and exhibits and carefully deliberating, the undersigned recommends that the District Court adopt the following recommended findings of fact and conclusions of law.

## I. RECOMMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

On June 13, 2007, the grand jury sitting in Newport News, Virginia returned a two-count indictment charging Reavis with interstate transportation of a firearm and ammunition with the intent to commit a felony, and possession of a firearm after being convicted of a felony. Petitioner was arrested in Maryland on November 21, 2007. (Nov. 30, 2007 Minute Entry). Reavis appeared in this Court for his initial appearance on December 5, 2007. At that time, Magistrate Judge Tommy E. Miller appointed Richard J. Colgan to represent Reavis. (Dec. 5, 2007 Minute Entry). Colgan subsequently filed a Motion to Withdraw as Attorney, which was granted. (ECF No. 15). On February 1, 2008, Stephen A. Hudgins ("Hudgins") was appointed

to represent petitioner. (ECF No. 16). Hudgins first appeared on Reavis' behalf at his re-arraignment on February 6, 2008. (Feb. 6, 2008 Minute Entry).

On October 21, 2008, Reavis appeared with his counsel before the District Court for a plea agreement hearing in accordance with Rule 11 of the Federal Rules of Criminal Procedure. At that time, Reavis entered into a plea agreement with the United States and signed an accompanying statement of facts. (Oct. 21, 2008 Minute Entry; ECF Nos. 47-48). Pursuant to the plea agreement, Reavis pleaded guilty to Count One of the indictment—interstate transportation of a firearm and ammunition with the intent to commit a felony. At the hearing, the District Court explained to Reavis that, pursuant to the plea agreement, Reavis was waiving his right to appeal. (Oct. 21, 2008 Minute Entry). The District Court accepted the plea agreement and Reavis' plea, found Reavis guilty, and continued the matter to January 26, 2009 for sentencing. Id. Pursuant to the District Court's order (ECF No. 49), the Probation Office prepared a PSR in preparation for sentencing.

The sentencing hearing was continued to February 27, 2009. (ECF No. 54). At that time, the District Court resolved the parties' objections to the PSR and sentenced Reavis to 120 months imprisonment and three years of supervised released. The District Court further imposed a special assessment in the amount of $100.00. On motion by the United States, the District Court dismissed Count Two of the indictment. (Feb. 27, 2009 Minute Entry). Judgment was entered March 2, 2009. (ECF No. 60).

Immediately following the sentencing hearing, Hudgins met with Reavis in the holding cell to discuss what had transpired. (Transcript of Evidentiary Hearing, ECF No. 89 at 45). According to Hudgins, Reavis was both disappointed and surprised by the sentence imposed, but it did not create any immediate problems between them. Id.

Reavis and Hudgins only met in person one additional time after sentencing. Hudgins testified that it is his customary practice to follow-up with clients after sentencing "to make sure they don't have questions about what went on in court." (Transcript of Evidentiary Hearing, ECF No. 89 at 47). Therefore, on March 12, 2009, Hudgins visited Reavis at Western Tidewater Regional Jail ("WTRJ"). At that time, Hudgins and Reavis discussed what they both perceived to be the unfairness of Reavis' federal sentence after having been charged in state court for conduct involving the same gun. Id. at 55. With regard to the issue of appeal, Hudgins stated that they did not discuss "the possibility that maybe we should appeal, just the fact that there wasn't going to be an appeal." Id. at 48, 55. According to Hudgins, Reavis understood that there was no possibility of appeal because he both understood that he waived his right to appeal in the plea agreement and there were no nonfrivolous issues to raise on appeal. Id. at 48.

At the evidentiary hearing on February 14, 2011, Hudgins testified that at no time during their meeting at WTRJ did Reavis instruct him to file a notice of appeal. Id. at 49. In his affidavit, Hudgins also states that Reavis never asked him to file a direct appeal. (Evidentiary Hearing Ex. 11 at ¶ 7). Further, Hudgins testified that, had Reavis instructed him to file a notice of appeal, he would have done so. (Transcript of Evidentiary Hearing, ECF No. 89 at 54) ("[T]hat is what I do for a living. It's financially in my benefit to file the appeal. It is like getting another case. There would have been no incentive for me not to have noted an appeal and pursued it if he had asked for it.").

Other than their meeting immediately after sentencing and on March 12, 2009, contact between Reavis and Hudgins was by mail. In fact, Reavis regularly wrote Hudgins, and Hudgins retained copies of all the letters he received from Reavis. (Evidentiary Hearing Exs. 2-9). In his § 2255 motion, Reavis alleges that "[a]pproximately three days after sentencing, the Petitioner

wrote his attorney and instructed counsel to appeal the Court's rulings." (ECF No. 71 at 43). Reavis attached to his motion a letter to Hudgins dated March 2, 2009 (the "March 2, 2009" letter)—the same date as the sentencing hearing—in which he states: "I want you to file an appeal for me." (ECF No. 71 at 51; also admitted as Evidentiary Hearing Ex. 10). Reavis testified that he mailed this letter to Hudgins. (Transcript of Evidentiary Hearing, ECF No. 89 at 11, 40-41).

Both in his affidavit and at the hearing, Hudgins testified that he never received this letter. (Evidentiary Hearing Ex. 11 at ¶ 8; Transcript of Evidentiary Hearing, ECF No. 89 at 52). Hudgins provided all the correspondence he received from Reavis after sentencing. This included several letters dated as follows: "3-2-09" (the "3-2-09 letter"); "3-10-09"; "June 14, 2009"; "June 25, 2009"; "July 16, 2009"; "July 27, 2009"; "August 6, 2009"; and "September 7, 2009." (Evidentiary Hearing Exs. 2-9). The "3-2-09" letter is different than the "March 2, 2009" letter and does not mention filing an appeal. Id. at Ex. 2. Both in his affidavit and at the hearing, Hudgins testified that the "3-2-09" letter was the first letter he received from Reavis after sentencing. (Evidentiary Hearing Ex. 11 at ¶ 8; Transcript of Evidentiary Hearing, ECF No. 89 at 52).

In the several letters from Reavis that Hudgins provided at the hearing, Reavis is primarily concerned about the return of certain personal property belonging to him and also requests copies of documents related to his case. The first mention of an appeal is contained in the third letter dated June 14, 2009 more than two months after entry of judgment. In that letter Reavis states: "Long before I left WTRJ I decided to appeal my conviction." (Evidentiary Hearing Ex. 4). According to Hudgins, "this was the first notice that I had that he had any intention to file an appeal." (Transcript of Evidentiary Hearing, ECF No. 89 at 49; see

5

Evidentiary Hearing Ex. 11 at 3). At the evidentiary hearing, Reavis testified that the appeal he was referring to in the June 14, 2009 letter was not a direct appeal, but his plan to file a motion pursuant to § 2255. (Transcript of Evidentiary Hearing, ECF No. 89 at 22).

In his motion, Reavis "sadly acknowledges that he pled guilty . . . and waived his right to appeal." (ECF No. 71 at 48). At the evidentiary hearing, Reavis again acknowledged that he waived his right to appeal in the plea agreement, (Transcript of Evidentiary Hearing, ECF No. 89 at 14); however, for the first time he alleged that he did not understand the implications of the waiver because was under the influence of psychotropic medications at the time and did not use "good judgment," id. at 14-15.

After considering the foregoing evidence, the undersigned FINDS that Reavis did not instruct his attorney to appeal and as a result cannot establish that his attorney was ineffective in failing to appeal. There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) constitutional issues; (2) challenges to the District Court's jurisdiction to impose the sentence; (3) challenges to the length of a sentence in excess of the statutory maximum; and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255.[2]

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if

---

[2]Title 28 U.S.C. § 2255 provides, in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). The movant bears the burden of proving his grounds for collateral attack by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958) (per curiam).

In his pro se motion, Reavis alleges among other things that he was denied effective assistance of counsel when his counsel failed to file a notice of appeal after Reavis instructed him to do so. To prevail on a claim of ineffective assistance of counsel, the movant bears the burden of showing: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). "To prevail, a petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness, and that such deficient performance was prejudicial." U.S. v. Willis, 273 F.3d 592, 598 (5th Cir. 2001) (citing Strickland, 466 U.S. at 687). If the petitioner makes an insufficient showing on one component of the Strickland analysis, it is not necessary for the court to address both components. Strickland, 466 U.S. at 697.

When evaluating an ineffective assistance claim based upon counsel's alleged failure to file an appeal, this Court is guided by Roe v. Flores-Ortega, 528 U.S. 470 (2000). In Flores-Ortega, the Supreme Court held that the Strickland test applies to claims that counsel was ineffective for failing to file a notice of appeal. In evaluating such claims, the Court held that where a defendant asks that an appeal be filed, and the attorney does not file one, the attorney's conduct is per se deficient under the first component of the Strickland analysis. Id. at 477; see United States v. Poindexter, 492 F.3d 263, 265 (4th Cir. 2007) (holding that "an attorney renders constitutionally ineffective assistance of counsel if he fails to follow his client's unequivocal

instruction to file a timely notice of appeal even though the defendant may have waived his right to challenge his conviction and sentence in [a] plea agreement").[3]

When a petitioner and his counsel submit conflicting affidavits regarding whether the petitioner requested counsel to file a notice of appeal, a genuine dispute exists concerning whether the petitioner was denied effective assistance of counsel. United States v. Matthews, 239 Fed. Appx. 806, 807 (4th Cir. 2007) (per curiam) (unpublished); see United States v. Witherspoon, 231 F.3d 923, 926-27 (4th Cir. 2000). The Fourth Circuit has noted "that motions turning on only factual and credibility issues cannot be resolved solely on the basis of affidavits, but rather, in general, require an evidentiary hearing." United States v. Murphy, 2000 WL 1144603, at * (4th Cir. Aug. 14, 2000) (per curiam) (unpublished).

Citing Flores-Ortega, Reavis contends that Hudgins' performance was per se deficient because he failed to note Reavis' appeal after being instructed to do so. (ECF No. 71 at 43). At the evidentiary hearing, the witnesses' testimony was consistent in several respects,[4] but differed sharply on one point: whether Reavis instructed Hudgins to file a notice of appeal. Reavis maintains that he instructed Hudgins to file a notice of appeal during his March 12, 2009 visit to WTRJ and in the "March 2, 2009" letter. Hudgins testified that Reavis never instructed him to pursue an appeal and that he never received the "March 2, 2009" letter attached to Reavis' motion.

Having heard the testimony of both Reavis and Hudgins, the Court finds that Reavis' testimony on this disputed issue was not credible. At the evidentiary hearing, Reavis claimed that he mailed Hudgins a letter in early March instructing Hudgins to file an appeal. Reavis

---

[3]Likewise, counsel is under no obligation to file a notice of appeal where his client explicitly instructs him not to do so. Flores-Ortega, 528 U.S. at 478.
[4]Both Reavis and Hudgins agreed that they met twice after sentencing and that the tenor of those meetings was cordial. In fact, both expressed disappointment with the sentence Reavis received.

admitted that this letter—the "March 2, 2009" letter attached to his motion—was the only letter, of nine he claims to have sent, addressing the issue of appeal. (Transcript of Evidentiary Hearing, ECF No. 89 at 11). When questioned about the fact that he had two letters purportedly written on the same date but containing various differences, Reavis first proffered that he might have written the "March 2, 2009" letter a couple of days after writing the "3-2-09" letter, but then testified that he wrote both letters on the same date. Id. at 33.

The "March 2, 2009" and "3-2-09" letters contain other differences that suggest they were not written on the same date. The two letters differ stylistically and in tone, and refer to different sentencing ranges.[5] The "March 2, 2009" letter is marked at the bottom with the notation "c: file." Reavis testified that this indicated that it was a handwritten copy retained in his file. He could not explain why he did not similarly mark any of his other eight letters to counsel. (Transcript of Evidentiary Hearing, ECF No. 89 at 30). As his testimony progressed, Reavis was unable to remember the details of his correspondence to Hudgins, much less explain why he wrote two letters on March 2, 2009, or why he never inquired about the status of his appeal in any of the other letters he wrote to Hudgins.[6]

Hudgins' testimony, on the other hand, was more believable. Hudgins testified that he consulted with Reavis twice after sentencing and discussed, among other things, Reavis' waiver of appeal. Hudgins further testified that Reavis did not instruct him to file an appeal. He recalled and retained all of the correspondence he received from Reavis, including the "3-2-09" letter. He testified credibly that he never received the "March 2, 2009" letter which Reavis also

---

[5] In the "3-2-09" letter, Reavis refers to a very precise sentence range of 4.3 to 5.3 years. (ECF No. 75-1 at 6). In the "March 2, 2009" letter, Reavis accuses Hudgins of promising that he "would only do 3 to 4 years." (ECF No. 71 at 51).

[6] In fact, Reavis admitted that he was more concerned about the property he wanted returned to him than his appeal. (Transcript of Evidentiary Hearing, ECF No. 89 at 25-27).

9

claims to have sent. The Court further credits Hudgins' testimony that, had he been instructed to filed a notice of appeal, he would have done so.

Based on the testimony presented at the evidentiary hearing, the Court finds that Reavis did not ask Hudgins to file an appeal on his behalf. Accordingly, the fact that Hudgins did not file an appeal was not per se deficient. See Flores-Ortega, 528 U.S. at 478.

Having determined that Reavis did not explicitly instruct Hudgins to file a notice of appeal, the Court turns next to the issue of whether Hudgins consulted[7] with Reavis about his appellate rights. In Flores-Ortega, the Supreme Court addressed whether counsel performed deficiently by not filing a notice of appeal in the "in between" cases (such as the instant case) where the defendant did not clearly convey "his wishes one way or another." Id. at 477; see Poindexter, 492 F.3d at 268. As explained by the Supreme Court:

> In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question of whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. . . . If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal.

Flores-Ortega, 528 U.S. at 478; see Poindexter, 492 F.3d at 269 (discussing the holding of Flores-Ortega and stating that "it is only when the defendant either does not make his appellate wishes known or does not clearly express his wishes that an attorney has some latitude in deciding whether to file an appeal.").

---

[7] As used by the Supreme Court, the term "consult" has a specific meaning: "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Flores-Ortega, 528 U.S. at 478.

10

Counsel is not always required to consult with his client regarding an appeal. A constitutional duty to consult exists only when there is reason to believe either a rational defendant would want to appeal or that the defendant reasonably demonstrated to counsel that he was interested in appealing. Id. at 480; Poindexter, 492 F.3d at 268. In determining whether counsel had a constitutional duty to consult, the Supreme Court instructed courts to take into account "all relevant factors," including whether the conviction follows a trial or guilty plea. Id. In cases where the defendant pleads guilty, courts "must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." Id.

Whether or not he was constitutionally required to do so, the evidence shows that Hudgins did consult with Reavis about an appeal. Hudgins credibly testified that after sentencing he met with Reavis and discussed what transpired during the sentencing hearing and about the sentence imposed. Hudgins further testified that they discussed the fact that Reavis waived his right to appeal in the plea agreement. As noted above, the Court finds Hudgins' testimony credible and finds both that he did consult with Reavis about his appellate rights and that Reavis never asked Hudgins to file a notice of appeal. Thus, Hudgins did not perform deficiently. Flores-Ortega, 528 U.S. at 478. For these reasons, Reavis' claim that he was denied effective assistance of counsel due to his counsel's failure to appeal should fail.[8]

---

[8] As noted supra, because Reavis failed to make a sufficient showing on the performance component of the Strickland analysis, it is not necessary for the Court to address the prejudice component. Strickland, 466 U.S. at 697.

## II. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the District Court adopt the foregoing proposed findings of fact and conclusions of law, and deny Reavis' motion with respect to ground seven.

## III. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.

3. The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Newport News, Virginia
March 23, 2011